EDWARD V. ANDERSON (SBN 83148)
evanderson@sidley.com
DUY D. NGUYEN (SBN 246271)
ddnguyen@sidley.com
SIDLEY AUSTIN LLP
1001 Page Mill Road
Building 1
Palo Alto, CA 94304
Telephone:     650-565-7000
Facsimile:     650-565-7100

PHILIP W. WOO (SBN 196459)
pwoo@sidley.com
MARC R. ASCOLESE (SBN 251397)
mascolese@sidley.com
SIDLEY AUSTIN LLP
555 California Street
San Francisco, CA 94104
Telephone:     415-772-1200
Facsimile:     415-772-7400

*Attorneys for Plaintiff Centrify Corporation*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CENTRIFY CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>QUEST SOFTWARE, INC.<br><br>Defendant. | Case No. 10-3873-CW<br><br>**CENTRIFY CORPORATION'S OPPOSITION TO QUEST SOFTWARE'S MOTION TO STAY**<br><br>Date:          January 20, 2011<br>Time:          2:00 p.m.<br>Courtroom:   2, 4th Floor<br>Judge:         Hon. Claudia Wilken |

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ...........................................................................................1

II.  BACKGROUND ............................................................................................2

    A.   The '005 Patent and Its Infringement By Defendant........................... 2

    B.   The Inter Partes Reexamination of the '005 Patent............................ 2

    C.   Defendant's Motion to Stay and Related Proceedings Between Centrify and Defendant................................................................................................ 4

III. LEGAL STANDARD.....................................................................................5

IV.  ARGUMENT ................................................................................................6

    A.   Granting Defendant's Stay Request Would Unfairly Prejudice Centrify.................... 6

        1.   A stay pending reexamination will substantially delay Centrify's right to relief from Defendant's ongoing infringement ................................ 6

        2.   Centrify and Defendant are direct competitors and substantial delay of this action will undoubtedly harm Centrify ...................................... 9

        3.   A stay would place Centrify at a tactical disadvantage ................................ 11

    B.   A Stay Pending Inter Partes Reexamination is Not Likely to Simplify this Action.................................................................................................. 12

        1.   Cancellation of all claims is unlikely............................................. 12

        2.   A stay pending reexamination would further complicate this action ............. 12

        3.   This case presents numerous issues that the *inter partes* reexamination will not resolve.................................................................................. 13

    C.   Status of Litigation is Entitled to Little Weight........................................ 14

V.   CONCLUSION.............................................................................................15

CENTRIFY CORP.'S OPPOSITION TO QUEST SOFTWARE'S MOTION TO STAY
CASE NO. 4:10-cv-3873-CW

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Affinity Labs of Texas v. Apple, Inc.,*
   No. 09-04436 CW, 2010 WL 1753206 (N.D. Cal. Apr. 29, 2010) ..............................8, 12, 15

*BarTex Research, LLC v. FedEx Corp.,*
   611 F.Supp. 2d 647 (E.D. Tex. 2009) ...................................................................................6

*Baxter Int'l, Inc. v. Fresenius Medical Care Holdings, Inc.,*
   No. 08-C-2389, 2008 WL 4395854 (N.D. Ill. Sept. 25, 2008) ..............................................7

*Cherokee Nation of Oklahoma v. United States,*
   124 F.3d 1413 (Fed. Cir. 1997)..............................................................................................5

*Cooper Notification, Inc. v. Twitter, Inc.,*
   No. 09-865-LPS, 2010 WL 5140573 (D. Del. Dec. 13, 2010) ..................................... passim

*ePlus, Inc. v. Lawson Software, Inc.,*
   No. 3:09-CV-620, 2010 WL 1279092 (E.D. Va. Mar. 31, 2010)..........................................6

*Esco Corp. v. Berkeley Forge & Tool, Inc.,*
   No. C 09-1635 SBA, 2009 WL 3078463 (N.D. Cal. Sept. 28, 2009)....................................5

*F5 Networks, Inc. v. A10 Networks, Inc.,*
   No. C10-654MJP, 2010 WL 5138375 (W.D. Wash. Dec. 10, 2010) ...................................15

*Landis v. North Am. Co.,*
   299 U.S. 248 (1936).........................................................................................................5, 11

*Lockyer v. Mirant Corp.,*
   398 F.3d 1098 (9th Cir. 2005) .............................................................................................11

*Network Appliance Inc. v. Sun Microsystems Inc.,*
   No. C-07-06053, 2008 WL 4821318 (N.D. Cal. Nov. 3, 2008) .....................................8,0, 12

*Robbins v. H.H. Brown Shoe Co., Inc.,*
   No. 08 Civ. 6885(WHP), 2009 WL 2170174 (S.D.N.Y. June 30, 2009) ............................15

*Tesco Corp. v. Weatherford Int'l Inc.,*
   No. 08-cv-2531, 2010 WL 3075568 (S.D. Tex. Aug. 5, 2010) .........................................9, 10

*Ultra Prods., Inc. v. Antec, Inc.,*
   No. 09-04255 RS, 2010 WL 1688538 ................................................................................5, 6

*Wordtech Sys., Inc. v. Microboards Mfg., LLC,*
   No. C 09-04612 SI, 2010 WL 164510 (N.D. Cal. Apr. 22, 2010)....................................12, 15

**STATUTES**

35 U.S.C. § 101 .................................................................................................14

35 U.S.C. § 102 .................................................................................................14

35 U.S.C. § 103 .................................................................................................14

35 U.S.C. § 112 .................................................................................................14

35 U.S.C. § 116 .................................................................................................14

35 U.S.C. § 301 .................................................................................................14

35 U.S.C. § 311 ...........................................................................................2, 14

35 U.S.C. § 312 ...................................................................................................2

35 U.S.C. § 315 ...........................................................................................3, 4, 11


**OTHER AUTHORITIES**

37 C.F.R. § 1.935 ................................................................................................3

37 C.F.R. § 1.945 ................................................................................................3

37 C.F.R. § 1.947 .........................................................................................3, 11

37 C.F.R. § 1.949 ................................................................................................3

37 C.F.R. § 1.951 .........................................................................................3, 11

37 C.F.R. § 1.953 ................................................................................................3

37 C.F.R. § 41.61 .........................................................................................4, 11

37 C.F.R. § 41.77 .........................................................................................4, 11

Fed. R. Civ. P. 45 .......................................................................................12, 13

MPEP § 2601 ......................................................................................................4

MPEP § 2616 ......................................................................................................2

MPEP § 2633 ......................................................................................................3

MPEP § 2666 ......................................................................................................4

MPEP § 2671 ......................................................................................................3

MPEP § 2673 ......................................................................................................3

CENTRIFY CORP.'S OPPOSITION TO QUEST SOFTWARE'S MOTION TO STAY
CASE NO. 4:10-cv-3873-CW

## I.    **INTRODUCTION**

Justice delayed is justice denied.  Defendant Quest Software seeks the extraordinary relief of an indefinite stay of this action until the completion of *inter partes* reexamination—an interminable administrative process that courts estimate will take three to eight years to complete.  Defendant's request for a stay is nothing more than a bald attempt to deny Centrify its due process in favor of Defendant's assertion of its own patent (in another case), a patent also subject to *inter partes* reexamination.  Centrify and Defendant directly compete in the sale of enterprise security and identity management software for cross-platform systems and applications, a market noted for its fierce competition and continuous need for technical advances to keep pace with the rapidly changing technology demands of its customers.  One of the critical factors of Centrify's success has been its differential technology, including the innovations claimed by the patent-in-suit.  Centrify seeks to permanently enjoin Defendant, a much larger competitor, as soon as practicable, otherwise the competitive edge driven by Centrify's technology could become devalued and Centrify's market share could decline over time.  If a stay is granted, Defendant will have succeeded in thwarting Centrify in preserving its rights before Centrify has had its day in court.

Defendant's basis for this unjust result rests upon dubious grounds—a nascent development in the *inter partes* reexamination of the patent-in suit in which the United States Patent and Trademark Office ("PTO") rejected all claims.  But it is well known that this preliminary finding is the PTO's perfunctory response to a request for *inter partes* reexamination—courts have found that the PTO almost always grants initial rejections against all claims in such proceedings, and issuance of an Office Action with a reexamination order is not, as the Defendant would have the Court believe, "unusual."  The PTO's interim decision is by no means predictive of the ultimate outcome because Centrify has not yet had an opportunity to be heard.  The PTO's own *inter partes* reexamination statistics show that at least 53% result in one or more claims confirmed despite the PTO's pro forma rejection of all claims at the outset of such proceedings.  If a single claim of the patent-in-suit is confirmed, an outcome that is more likely than not, the delay will have achieved nothing except to prejudice Centrify.  Because a stay would harm Centrify and unlikely to simplify the issues to be decided in this action, the Court should deny Defendant's motion.

-1-

1    II.    __BACKGROUND__

2          A.    **The '005 Patent and Its Infringement By Defendant**

3          United States Patent 7,591,005 ("the '005 Patent") is entitled "Method and Apparatus for

4    User Log-in Name Mapping" and issued on September 15, 2009.  The '005 Patent claims, among

5    other things, computer software and methods to enable a user to log into a computer of one

6    architecture using a local log-in name for authentication across a network of computers of

7    heterogeneous architectures.  For example, a user can log into a UNIX computer using a local log-in

8    name for that computer and the '005 Patent teaches certain methods of mapping the local log-in

9    name, which may or may not be unique across an entire network, to a unique network log-in name

10   for authentication within a complex network of UNIX, Linux, Mac and/or Windows-based

11   computers.  The invention of the '005 Patent simplifies identity and access management across a

12   diverse computer network consisting of disparate systems and applications.  The innovations

13   claimed by the '005 Patent have been critical to the success of Centrify and its products, including

14   Centrify's suite of DirectControl products.  DirectControl is one of the leading solutions of its class

15   of software products enabling interoperability between heterogeneous computer systems and directly

16   competes with Defendant's Quest Authentication Services ("QAS") in the same space.  QAS

17   leverages the technology claimed by the '005 Patent without Centrify's authority and stands to erode

18   Centrify's market share unless Defendant is enjoined from infringing the '005 Patent.

19         B.    **The *Inter Partes* Reexamination of the '005 Patent**

20         The *inter partes* reexamination procedure begins when a third-party requester submits a

21   request in writing to the PTO for reexamination. 35 U.S.C. § 311.  The reexamination request raises

22   questions of patentability different from those raised in the previous examination before the PTO,

23   and relies on prior art purportedly presenting a new, non-cumulative technological teaching that was

24   not previously considered during prosecution.  *See* MPEP § 2616.

25         Upon receiving the *inter partes* reexamination request, the PTO has three months to decide

26   whether it raises "a substantial new question of patentability affecting any claim of the patent," and

27   whether to issue an order granting reexamination of any claims.  *See* 35 U.S.C. § 312(a).  An

28   examiner consults with the Reexamination Legal Advisor ("RLA") regarding whether to grant

-2-

reexamination and then (where reexamination is granted) prepares an order granting reexamination. MPEP § 2633. Along with the order, the examiner will "usually" issue an Initial Office Action on the merits. 37 C.F.R. § 1.935.[1]

After the Initial Office Action, the patent owner receives its first opportunity to submit arguments and evidence supporting the validity of the claims under reexamination. 37 C.F.R. § 1.945. The requester then receives the opportunity to make counterarguments to issues raised by the Office Action or the patentee's response. 37 C.F.R. § 1.947. After the examiner considers each set of arguments, she may issue an Office Action making a "preliminary," nonfinal decision on the merits, *i.e.*, a decision that does not close prosecution. MPEP § 2671.01 (I). The parties then make an additional round of arguments. *See* 37 C.F.R. §§ 1.945, 1.947. The examiner can make an unlimited number of "preliminary" decisions, with arguments by the parties following each decision. *See* MPEP § 2671 (I); *see also* MPEP § 2671.01 (I).

This phase of the reexamination ends when the examiner issues a "final" decision called an Action Closing Prosecution ("ACP"). 37 C.F.R. § 1.949. The ACP, however, is not a final decision, is not appealable, and does not end the *inter partes* reexamination process. MPEP § 2673.01. After the ACP, the patent owner and third-party requester have yet another chance to submit comments, after which the examiner can either issue a Right of Appeal Notice ("RAN"), or reopen the entire proceeding. *See* 37 C.F.R. §§ 1.951, 1.953. When an examiner reopens the proceeding, a new round of Office actions and arguments begins.

Once the RAN issues, both the patent owner and the requester may appeal the examiner's decision to the Board of Patent Appeals and Interferences ("Board"). A patent owner may appeal any decision adverse to the patentability of any claim. 35 U.S.C. § 315(a)(1). A third-party requester may appeal any final decision favorable to the patentability of any original or proposed amended or new claim of the patent. 35 U.S.C. § 315(b)(1). This includes any refusal by the examiner to make a rejection based upon a proposed rejection made by the third-party requester. 37 C.F.R. §

---

[1] On its face, 37 C.F.R. § 1.935 contradicts Defendant's so-called "Relevant Facts" that purports that the PTO took the "somewhat unusual step of including a first office action on the merits with its November 15, 2010 notification that the petition for reexamination was granted." Mot. at 2:21-23.

-3-

1    41.61(a)(2); MPEP § 2666.05 (III).  Thus, for every ground for rejection not adopted by the

2    examiner, the third-party requester receives an opportunity for an appeal. MPEP § 2666.05 (III).

3    The most recent Board statistics indicate that the average pendency from the Notice of Appeal,

4    which occurs long after reexamination is ordered, to a Board decision is **29 months**.  *See* Ex. A.[2]

5          Even a decision by the Board may not end the reexamination process—the Board may

6    remand the matter back to the examiner, restarting the entire process.  And, if the Board determines

7    that the patentee's claims should be rejected on grounds not considered by the examiner, the patentee

8    receives yet another opportunity to comment, followed by yet another response by the third-party

9    requester. 37 C.F.R. § 41.77(b).

10         Should the Board issue a decision finally disposing of an *inter partes* reexamination, a losing

11   party has the right to appeal to the Federal Circuit.  35 U.S.C. § 315(a),(b).  The patent owner can

12   appeal a decision adverse to the patentability of any claim, and the third-party requester can appeal

13   any decision favorable to the patentability of any claim.  *Id*.  *See also* MPEP § 2601.  Statistics

14   indicate that an appeal to the Federal Circuit can take anywhere from 8.2 months to 9.3 months.  *See*

15   Ex. B.  But an appeal to the Federal Circuit may not end the proceedings—the Federal Circuit may

16   start the entire process over by remanding the case to the PTO.

17         On August 31, 2010, Defendant filed a request for *inter partes* reexamination of claims 1-8

18   of the '005 Patent.  On November 15, 2010, the PTO granted Defendant's request (Reexamination

19   Control No. 95/000,542), and issued an Office Action rejecting claims 1-8 of the '005 Patent.  This

20   reexamination proceeding is still in a very early stage.

21         **C.**    **Defendant's Motion to Stay and Related Proceedings Between Centrify and**
             **Defendant**
22

23         On August 27, 2010, Defendant, whose principal place of business is in California, filed a

24   complaint in Utah accusing Centrify, which is based in this district and has no Utah employees or

25   offices, of infringing U.S. Patent No. 7,617,501 ("the '501 Patent").  Ex. C.  On September 30, 2010,

26   _____

27   [2] Citations to "Nguyen Decl." as used herein are citations to the Declaration of Duy D. Nguyen in
     Opposition to Quest Software's Motion to Stay, and citations to "Ex. __" are citations to the exhibits
     thereto.
28

-4-

1   Centrify filed a request for *inter partes* reexamination of the '501 Patent.  Nguyen Decl. ¶ 4.  On

2   November 24, 2010, the PTO granted Centrify's request and agreed that all of Centrify's bases for

3   reexamination raised substantial new questions of patentability.  *See* Ex. D at 7-10.  On December 7,

4   2010, Defendant sought Centrify's position with respect to staying this action pending reexamination

5   of the '005 Patent.  *See* Ex. E.  To promote judicial economy and to preserve the limited resources of

6   ***both*** parties, Centrify offered a counterproposal that both this action and the Utah action be stayed

7   pending reexamination of the parties' respective patents.  *See* Ex. F.  Centrify did not make this offer

8   lightly, but carefully weighed the significant impact on Centrify's competitive position should this

9   case be stayed against the high cost of simultaneously litigating two patent matters against a much

10   larger and better funded company.  However, Defendant did not agree to Centrify's counterproposal.

11   *See id.*

12   **III.   LEGAL STANDARD**

13          The power to stay proceedings is incidental to a court's inherent power to control its own

14   docket.  *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936).  In exercising its authority to grant a

15   stay, a court is given broad discretion to "weigh competing interests and maintain an even balance."

16   *Id.* at 255.   "In deciding to stay proceedings indefinitely, a trial court must first identify a pressing

17   need for the stay [and] then balance interests favoring a stay against interests frustrated by the action.

18   Overarching this balancing is the court's paramount obligation to exercise jurisdiction timely in cases

19   before it."  *Cherokee Nation of Oklahoma v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997)

20   (citing *Landis*, 299 U.S. at 255).  In the specific context of whether to grant a stay pending

21   reexamination, the rule of thumb is:

22              A court is under no obligation to delay its own proceedings by yielding
             to ongoing PTO reexaminations, regardless of their relevancy to
23           infringement claims which the court must analyze.  There is no per se
             rule that patent cases should be stayed pending reexaminations,
24           because such a 'rule would invite parties to unilaterally derail'
             litigation.
25

26   *Esco Corp. v. Berkeley Forge & Tool, Inc.*, No. C 09-1635 SBA, 2009 WL 3078463, at *2 (N.D.

27   Cal. Sept. 28, 2009) (citations omitted).  Instead, "[t]he decision to stay a patent case in the midst of

28   a PTO reexamination rests with a court's discretion."  *Ultra Prods., Inc. v. Antec, Inc.,* No. 09-04255

1   RS, 2010 WL 1688538, at *2 (citing *Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed.

2   Cir. 2001)).  Three factors are considered to determine whether to suspend litigation pending

3   reexamination:  "(1) whether a stay would unduly prejudice or present a clear tactical advantage to

4   the nonmoving party; (2) whether a stay will simplify the issues in question and trial of the case; and

5   (3) whether discovery is complete and whether a trial date has been set."  *Ultra Prods., Inc. v. Antec,*

6   *Inc.,* 2010 WL 1688538, at *2.  "Ultimately, the party seeking a stay must make out a 'clear case of

7   hardship or inequity in being required to go forward.' … If hardship or inequity cannot be shown, a

8   stay is not merited."  *ePlus, Inc. v. Lawson Software, Inc.*, No. 3:09-CV-620, 2010 WL 1279092, at

9   *2 (E.D. Va. Mar. 31, 2010) (citations omitted).

10  **IV.   ARGUMENT**

11       **A.   Granting Defendant's Stay Request Would Unfairly Prejudice Centrify**

12             **1.   A stay pending reexamination will substantially delay Centrify's right to
                 relief from Defendant's ongoing infringement**

13

14       Courts uniformly disfavor a stay pending *inter partes* reexamination because of the certainty

15  of substantial delay.  One court in the Eastern District of Virginia estimates the pendency of *inter*

16  *partes* reexamination to be six years or more.  *See id.* at *3 ("staying this action for an indefinite

17  period of time, possibly lasting six years or more, prejudices [the patentee] and does not serve the

18  efficient administration of justice or the public interest").  Relying on older reexamination statistics,

19  courts in the Eastern District of Texas report that *inter partes* reexamination, including appeals to the

20  Board and Federal Circuit, can take upward to "78.4 months" or 6.53 years.  *See BarTex Research,*

21  *LLC v. FedEx Corp.*, 611 F.Supp. 2d 647, 651 (E.D. Tex. 2009) (citation omitted).  Courts in the

22  District of Delaware similarly have found that ""[R]eexaminations … are likely to take 6.5 to 8 years

23  to reach a final decision.'"  *Cooper Notification, Inc. v. Twitter, Inc.*, No. 09-865-LPS, 2010 WL

24  5140573, at *3 (D. Del. Dec. 13, 2010) (citation omitted).  In view of this considerable delay, courts

25  are generally loath to granting  stay:

26             the Court finds that a delay that is not merely lengthy but potentially
               indefinite is prejudicial to the non-moving party.  Furthermore, the
27             potential efficiency of having some or all of the issues in this case
               resolved by the PTO must be heavily discounted in light of the fact
28             that it is uncertain when, if ever, this resolution would come.  For these

-6-

1   reasons, the Court finds that a stay pending resolution of the *inter partes* reexamination of the patents in suit would be inappropriate.

2

3   *Baxter Int'l, Inc. v. Fresenius Medical Care Holdings, Inc.*, No. 08-C-2389, 2008 WL 4395854, at *5

4   (N.D. Ill. Sept. 25, 2008).

5      Defendant's contention that the *inter partes* reexamination of the '005 Patent is likely to

6   conclude within a short time is without merit.  Defendant suggests that "recently-filed

7   reexaminations will require even less time to complete than in the past" because "the average time to

8   a first office action on the merits has dropped consistently every year over the past three years."

9   Mot. at 5:12-14.  Arguing that the average time from filing to the first office action on the merits is

10  indicative of the overall pendency of an *inter partes* reexamination is much like a casual baseball fan

11  who surmises that if the first inning concludes in ten minutes then the entire game will surely be

12  completed in an hour and a half.  To the extent the PTO's reexamination operational statistics are

13  relevant to determine the likely pendency of the reexamination of the '005 Patent, the appropriate

14  figures to examine are the average months from filing to issuance of the reexamination certificate:

15



28

-7-

1    *See* Ex. G.  *See also* Def.'s Decl. Exs. 5, 8, 9 (accord).[3]

2           To divine any trend from these figures seems beyond the capability of even the most

3    mathematically astute patent attorney.  The only reasonable conclusions that can be made from the

4    PTO's reexamination statistics are that:  (1) from Quarter 4 of 2007 through Quarter 3 of 2010 the

5    average *inter partes* reexamination took anywhere from 27.1 months to 41.7 months (*see id.*); and

6    (2) the overall average pendency of *inter partes* reexamination as of Quarter 3 of 2010 is 36.1

7    months.  *See* Ex. H; *see also* Def's Ex. 7 (same).  But the relevant average pendency is probably

8    longer because the PTO's calculated average pendency include *inter partes* reexaminations of patents

9    abandoned by the patentee at the beginning of the proceedings.  *See Network Appliance*, 2008 WL

10   4821318, at *2 ("in many cases, the patent holder abandoned its defense of the patent by failing to

11   respond to office actions and the like").  And contrary to Defendant's baseless speculation that

12   "leading indicators suggest that recently-filed reexaminations will require even less time to complete

13   than in the past (Mot. at 5:11-12)," the average pendency has in fact only decreased incrementally

14   between 2009 and Quarter 3 of 2010 from 36.2 months to 36.1 months, and has actually risen since

15   2008 and 2007, when the average pendency was 34.9 months and 28.5 months, respectively.  Exs.

16   H-K.  *See also* Def.'s Exs. 6-7 (accord).  If anything, the PTO's statistics suggest that *inter partes*

17   reexaminations are likely to take longer to complete each year.  *See also Affinity Labs of Texas v.*

18   *Apple, Inc.*, No. 09-04436 CW, 2010 WL 1753206, at *1 (N.D. Cal. Apr. 29, 2010) ("The average

19   length of delay is likely to increase considering the steady rise in the number of reexaminations filed

20   in the past several years").

21           Defendant also makes much of the purported "accelerated schedule" of the reexamination of

22   the '005 Patent because the PTO issued a first office action on the merits in 2.5 months, the

23   technology is of "'low to moderate complexity,'" and the small number of claims at issue.  Mot. at

24   5:19-6:15.  This argument simply does not hold water because the PTO has taken more than 4 years

25   to complete *inter partes* reexaminations under substantially similar circumstances.  *See*, *e.g.*, Exs. L-

26

27   _____
     [3] Citations to "Def.'s Ex. __" as used herein are citations to the exhibits to the Declaration of Orion
     Armon in Support of Defendant Quest Software, Inc.'s Motion to Stay.

28
     -8-

1  N (Reexamination Control No. 95/000,012, requesting reexamination of 16 claims of patent relating

2  to a bicycle gear with a first office action on the merits within 2.5 months and having a 6.25-year

3  pendency); Exs. O-Q (Reexamination Control No. 95/000,013, requesting reexamination of 4 claims

4  of patent relating to method of making cheese with a first office action on the merits within 2.5

5  months and having a 4.20-year pendency); Exs. R-T (Reexamination Control No. 95/000,103,

6  requesting reexamination of 9 claims of patent relating to a mobile video system with an initial ACP

7  within 1.97 months and having a 4.39-year pendency).

8          A patent reexamination is not unlike a court trial, each with its attendant set of unique facts,

9  actors, and outcomes.  It is folly to conclude that the reexamination of the '005 Patent is likely to

10  "proceed much more quickly … than is typical" simply because there is no "typical" reexamination.

11  Mot. at 6:14-15.  Indeed, given the vagaries of the inter *partes* reexamination proceeding, it is very

12  likely that the *inter partes* reexamination of the '005 Patent will be completed much later than this

13  Court is expected to reach a disposition of this action if there was no delay.  *See* Scheduling Order,

14  Dec. 27, 2010, ECF No. 33 (setting trial for September 24, 2012).  *See also* Ex. U (median time of

15  disposition of civil cases from filing to trial in N.D. Cal. is 24.2 months).

16                  **2.      Centrify and Defendant are direct competitors and substantial delay of
                              this action will undoubtedly harm Centrify**

17

18          The Court can address the extent to which Centrify can exclude Defendant from practicing

19  the patent-in-suit.  Reexamination cannot address this question, and a stay would only impede

20  resolution of this issue.  Centrify and Defendant are direct competitors, and legal remedies will not

21  be sufficient to compensate Centrify for the irreparable harm caused by Defendant's infringement.

22  Courts recognize that direct competition adds another consideration to the calculus of whether to

23  grant stay and regularly deny the request in such instances:

24                  Where the parties are direct competitors, a stay would likely prejudice
                    the non-movant …  In the instant case, [Plaintiff] and the Defendants
25                  are direct competitors.  As a result, a stay would prejudice [Plaintiff's]
                    rights to exclusive use of technology on which it holds a valid patent.
26                  The potential prejudice to [Plaintiff] is exacerbated by the lengthy and
                    uncertain amount of time required to complete the re-examination
27                  process."

28

1   *Tesco Corp. v. Weatherford Int'l Inc.*, No. 08-cv-2531, 2010 WL 3075568, at *5 (S.D. Tex. Aug. 5,

2   2010).

3           Defendant's statement that there is no "reason to conclude that Centrify will experience loss

4   of rights due to a stay" because Centrify will not "lose its ability to seek injunctive relief due to

5   reexamination-related delay" is a non-sequitur.  Mot. at 5:2-5.  If a stay is granted, Centrify will have

6   been deprived of the right to exclude Defendant from practicing the '005 Patent for between three to

7   eight years after Centrify ultimately prevails upon resumption of this case.  Defendant suggests that

8   Centrify's decision not to seek preliminary injunctive relief indicates that Centrify will not suffer any

9   loss of rights due to a stay.  Mot. 5:6-7.  This reasoning has been soundly rejected by the courts:

10              Defendants further contend that injunctive relief will not be
                appropriate here … because [Plaintiff] did not seek a preliminary
11              injunction and a permanent injunction will not be available as long as
                the asserted claims remain cancelled in the reexamination. The Court
12              disagrees. [Plaintiff] candidly acknowledged at the hearing that it did
                not seek a preliminary injunction because, without substantial
13              discovery (possibly including access to Defendants' sourcecode), it
                cannot meet the high burden for such relief. This tells one nothing
14              about [Plaintiff's] motivation to obtain injunctive relief, or even about
                the potential irreparability of any harm from any infringement (if
15              ultimately proven). With respect to a permanent injunction, it is
                enough to say that Defendants' motion to stay arises well before such
16              relief could possibly be considered by the Court, so Defendant's
                contention presents no reason to stay the instant litigation.
17

18   *Cooper Notification*, 2010 WL 5140573, at *4.

19           Defendant also claims that it will be harmed if a stay is not entered because "there is a high

20   likelihood that Quest will be required to expend resources litigating validity and claim construction

21   issues for claims that will be amended or canceled during reexamination."  Mot. at 6:18-20.  The

22   PTO's reexamination statistics belie this conjecture, which show that 53% of the patents undergoing

23   *inter partes* reexamination conclude with the issuance of a reexamination certificate confirming one

24   or more claims.  *See* Ex. D; *see also* Def.'s Ex. 7 (same).  But even this figure does not accurately

25   reflect cancellation of all claims on the merits.  The 47% rate of cancellation of all claims following

26   *inter partes* reexamination includes patents that have been abandoned by the patentee.  *See Network*

27   *Appliance*, 2008 WL 4821318, at *2.  The patentee's failure to contest the reexamination may

28   happen for many reasons and is not necessarily a concession as to the invalidity of the claims.  For

-10-

1  example, costs may preclude the patentee from continuing to defend the patent.  In any event, "being

2  required to defend a suit, without more does not constitute a 'clear case of hardship or inequity'

3  within the meaning of *Landis*."  *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005).

### 3.      A stay would place Centrify at a tactical disadvantage

5          Granting Defendant's request for a stay would present Defendant with a "clear, and

6  unwarranted, tactical advantage."  *Cooper Notification*, 2010 WL 5140573, at *3.  "Staying this

7  litigation in favor of the PTO proceeding would grant Defendants their choice of forum-here, for no

8  good reason."  *Id.*  Defendant's motion is a transparent attempt to frustrate Centrify in protecting its

9  interests, while Defendant seeks to forge ahead with assertion of its own patent, a patent also subject

10  to *inter partes* reexamination.  *See, supra*, at 4:21-11:5.  Defendant's request to stay this case

11  pending reexamination is especially troubling because Defendants have substantial control over how

12  *inter partes* reexamination will proceed.  *See, e.g.,* 37 C.F.R. §§ 1.947, 1.951, 41.61(a)(2), 41.77; 35

13  U.S.C. § 315(b).  Defendant can dictate the progress of the *inter partes* reexamination of the '005

14  Patent, and whether intentional or not, can effect substantial delay while Centrify's claims languish if

15  this Court grants Defendant's request for a stay.  In addition, "the inability to conduct discovery

16  during reexamination will deprive [Plaintiff] of the opportunity to effectively challenge the alleged

17  prior art in the reexamination proceedings, as it could in defending against defendants' counterclaims

18  in this Court."  *Wordtech Sys., Inc. v. Microboards Mfg., LLC*, No. C 09-04612 SI, 2010 WL

19  164510, at *2 (N.D. Cal. Apr. 22, 2010).  This Court should deny stay because "it will be beneficial

20  to all parties to develop the fullest possible record in relation to the claims and counterclaims in this

21  action."  *Id.*  Finally, the timing of Defendant's request for *inter partes* reexamination of the '005

22  Patent—one day after commencement of this suit—strongly suggests that Defendant was tactically

23  motivated to delay this case pending reexamination.  Defendant apparently had knowledge of the

24  '005 Patent well before the Complaint was filed, yet only chose to initiate reexamination proceedings

25  upon Centrify filing suit.  *See Esco*, 2009 WL 3078463, at *4 (finding that Defendant used *inter*

26  *partes* reexamination to gain tactical advantage where Defendant was aware of the patents-in-suit

27  prior to institution of the action but "made no effort to seek reexamination of the patents-in-suit until

28  it became apparent that Plaintiff was unwilling to license its patents and litigation was inevitable").

1

**B.      A Stay Pending *Inter Partes* Reexamination is Not Likely to Simplify this Action**

2

**1.      Cancellation of all claims is unlikely**

3

The PTO's initial rejection of the claims of the '005 Patent is not predictive of the ultimate

4

outcome because an *inter partes* reexamination proceeding begins with an initial rejection as a

5

matter of course.  *See Network Appliance Inc. v. Sun Microsystems Inc.*, No. C-07-06053, 2008 WL

6

4821318, at *2 (N.D. Cal. Nov. 3, 2008) ("the PTO almost always starts with an initial rejection in

7

*inter partes* reexaminations against all claims," and "the Court gets only limited guidance from

8

initial actions as to the ultimate outcome").  In fact, there have been several instances in which the

9

PTO rejected all of the claims requested for *inter partes* reexamination initially but the PTO

10

eventually issued a reexamination certificate confirming all claims.  *See, e.g.,* Exs. V-W

11

(Reexamination Control No. 95/000,010); Exs. X-Y (Reexamination Control No. 95/000,015); Exs.

12

Z-AA (Reexamination Control No. 95/001,123).  And as discussed above, there is a 53% or greater

13

chance that one or more claims of the '005 Patent will be confirmed by the PTO.  *See, supra*, at

14

10:21-11:1.  If even one claim survives reexamination, then a stay would not have finally resolved

15

all issues in this litigation.  *See Affinity Labs*, 2007 WL 3314623, at *2 ("it is also likely that not *all*

16

of the issues regarding the patents in question before this Court will necessarily be resolved in the

17

reexamination.  Accordingly, this Court will likely have to adjudicate the infringement and invalidity

18

of at least some patent claims.") (emphasis in original).

19

**2.      A stay pending reexamination would further complicate this action**

20

In most respects, a potential delay of up to eight years would only make this case more

21

complicated.  Defendant is likely to design and develop new products that infringe the '005 Patent

22

during the period this case would be stayed.  For example, QAS was initially released in 2003.  Ex.

23

BB.  The latest version of this accused product appears to be version 4.0.  *Id.*  Assuming the software

24

development lifecycle for QAS continues at this same pace, there will be anywhere from one to four

25

additional accused products for QAS alone during the pendency of a stay, and many more if

26

Defendants speeds up its development cycle, during the pendency of a stay.  Moreover, the labor

27

market for the software industry is notoriously volatile with 30% of employers expected to make

28

-12-

1    changes to their technical workforce in Quarter 4 2010.  *See* Ex. CC.  During any protracted period

2    of time this case is delayed, both Centrify and Defendant's employees with knowledge relevant to

3    this action are likely to leave their respective companies which would necessitate third party

4    discovery with no certainty that such witnesses would be available at trial.  *See* Fed. R. Civ. P.

5    45(c)(3)(A)(ii) (requiring quashing of trial subpoena to out-of-state witnesses).  An indeterminately

6    prolonged stay would further complicate this action for Centrify because of stale evidence, failed

7    memories, and lost documents, while such inevitabilities would not affect Defendant:

8              Much of the evidence [the patentee] must amass to prove infringement
               exists in the minds of witnesses, whose memories will inevitably fade,
9              and who may be difficult to find as time passes.  Infringement will also
               depend to some extent on how Defendants' accused products and
10             services function today, which will be harder to prove years from now.
               By contrast, some of the matters on which Defendants bear the burden,
11             such as invalidity … due to anticipation or obviousness may not grow
               more difficult to prove, as they are based largely on prior art
12             references, which do not change.

13   *Cooper Notification*, 2010 WL 5140573, at *4.

14             3.       **This case presents numerous issues that the *inter partes* reexamination
                        will not resolve**
15

16           The *inter partes* reexamination of the '005 Patent is limited to a narrow question—whether

17   the claims are anticipated or obvious in view of prior art patents or printed publications.  *See* 35

18   U.S.C. §§ 301, 311(a); MPEP § 2617.  Therefore the completion of reexamination would leave all

19   other contested issues in this action unresolved.  For example, the PTO will not decide:

20       •       whether the claims of the '005 Patent are infringed by QAS and other Quest software

21               relating to identity and access management;

22       •       whether the '005 Patent is invalid under 35 U.S.C. § 101 because the claims are

23               allegedly inoperable and/or lack substantial utility;

24       •       whether the claims of the '005 Patent are invalid under 35 U.S.C. §§ 102(a), (b), (e),

25               (g), 103(a) because the claims are allegedly anticipated or obvious in view of prior art

26               not cited in Defendant's request for *inter partes reexamination*;

27       •       whether the claims of the '005 Patent are invalid under 35 U.S.C. §§ 102(f) for

28               allegedly being derived from the invention of another;

-13-

1    • whether the '005 Patent is invalid under 35 U.S.C. § 112 ¶ 1 for allegedly failing to

2    contain a sufficient written description of the claimed inventions, to enable the

3    claimed inventions, and/or to describe the best mode of the claimed inventions;

4    • whether the claims of the '005 Patent are invalid under 35 U.S.C. § 112 ¶ 2 for

5    alleged indefiniteness;

6    • whether the '005 Patent is invalid under 35 U.S.C. §§ 116 for alleged nonjoinder

7    and/or misjoinder of inventors;

8    • whether the '005 Patent is unenforceable because of Centrify's alleged unclean hands;

9    • the damages to be awarded to Centrify, in the form of lost profits and/or a reasonable

10    royalty; and

11    • whether Centrify is entitled to injunctive relief.

12    *See* Am. Compl. 3:15-4:2, Nov. 15, 2010, ECF No. 22; Answer to Am. Compl., Dec. 9, 2010, ECF

13    No. 28, 7:5-8:15, 10:13-11:1.  As a matter of law, staying this case could not simplify any of these

14    issues in the likely event that at least one claim of the '005 Patent is confirmed by the PTO in the

15    *inter partes* reexamination.  Indeed, a stay of this action is more liable to further complicate this

16    dispute, increase its administrative cost, and substantially delay its resolution.

17    **C.    Status of Litigation is Entitled to Little Weight**

18    The progress made in litigation has little bearing on the determination of whether a stay

19    should be granted other than to "weigh heavily" against such a request where litigation is at an

20    advanced stage:

21    > Although the advanced nature of a case approaching trial may weigh
     > heavily against granting a stay, the opposite inference—that a suit in
22    > the early stages should weigh heavily in favor of a stay—is not true.
     > As a case progresses through the stages of litigation, the grant of a stay
23    > generally becomes more costly to the parties and to the court.  Yet, just
     > as the absence of a negative inference does not create a positive
24    > inference, so also the lesser cost of granting a stay early in the
     > litigation process does not equate to a factor favoring a stay; the lower
25    > cost simply indicates the best time to grant a stay is in the early stages
     > of litigation.

26

27    *Sunbeam Prods., Inc. v. Hamilton Beach Brands*, No. 3:09cv791, 2010 WL 1946262, at *3 (E.D. Va.

28    May 10, 2010).  Courts in this district routinely deny requests for a stay pending reexamination even

-14-

1    in instances where a case is in its "embryonic stage."  *Esco*, 2009 WL 3078463, at *2 (denying stay

2    where no discovery had been taken and no trial date or other pretrial deadlines had been established).

3    *See also Affinity Labs*, 2010 WL 1753206, at *1 (denying stay where no discovery had taken place,

4    no trial date had been set, and the parties had not appeared in court for their initial case management

5    conference); *Wordtech*, 2010 WL 1641510, at *1 (denying stay where no discovery had been

6    conducted, no trial date had been set, and the court had not held an initial case management

7    conference).  Similarly, courts outside of the Northern District of California have denied motions to

8    stay where "discovery has just begun."  *Cooper Notification,* 2010 WL 5140573, at *3 (denying stay

9    where discovery had just begun and an initial office action in *inter partes* reexamination of the

10   patent-in-suit had rejected all claims).  *See also F5 Networks, Inc. v. A10 Networks, Inc.*, No. C10-

11   654MJP, 2010 WL 5138375, at *2 (W.D. Wash. Dec. 10, 2010) (denying stay in a case at a "very

12   early stage of litigation" and discovery had not yet begun); *Robbins v. H.H. Brown Shoe Co., Inc.*,

13   No. 08 Civ. 6885(WHP), 2009 WL 2170174, at *2 (S.D.N.Y. June 30, 2009) (denying stay where

14   litigation was in its "early stages").  Whether or not this action is in its early stages is of no moment

15   where *inter partes* reexamination is in its infancy.  *See Cooper Notification*, 2010 WL 5140573, at

16   *3 (denying stay "given the even earlier stage of the reexamination").

17   **V.    CONCLUSION**

18          For the foregoing reasons, the Court should deny Defendant's request for a stay pending

19   reexamination.

20

21

22

23

24

25

26

27

28

1

Respectfully submitted,

2

Dated: December 30, 2010

3

4
By:  /s/ Edward V. Anderson

EDWARD V. ANDERSON ( 83148)

5
evanderson@sidley.com

DUY D. NGUYEN (SBN 246271)

6
ddnguyen@sidleyc.com

SIDLEY AUSTIN LLP

7
1001 Page Mill Road

Building 1

8
Palo Alto, CA 94304

Telephone:     650-565-7000

9
Facsimile:      650-565-7100

10

11
PHILIP W. WOO (SBN 196459)

pwoo@sidley.com

12
MARC R. ASCOLESE (SBN 251397)

mascolese@sidley.com

13
SIDLEY AUSTIN LLP

555 California Street, Suite 2000

14
San Francisco, CA  94104-1715

Telephone:     415-772-1200

15
Facsimile:      415-772-7400

16
*Counsel for Plaintiff Centrify Corp.*

17

18

19

20

21

22

23

24

25

26

27

28