1    COOLEY LLP
     THOMAS J. FRIEL, JR. (State Bar No. 80065)
2    (tfriel@cooley.com)
     101 California Street, 5th Floor
3    San Francisco, CA  94111-5800
     Telephone:     (415) 693-2000
4    Facsimile:     (415) 693-2222

5    WAYNE O. STACY (pro hac vice)
     (stacywo@cooley.com)
6    ORION ARMON (pro hac vice)
     (oarmon@cooley.com)
7    COOLEY LLP
     380 Interlocken Crescent
8    Suite 900
     Broomfield, CO  80021-8023
9    Telephone:     (720) 566-4000
     Facsimile:     (720) 566-4099
10
     Attorneys for Defendant
11   Quest Software, Inc.

12                    UNITED STATES DISTRICT COURT

13                   NORTHERN DISTRICT OF CALIFORNIA

14                          OAKLAND DIVISION

15   CENTRIFY CORPORATION,              Case No.  C 10-3873-CW

16                    Plaintiff,        **QUEST SOFTWARE'S NOTICE OF
                                        MOTION AND MOTION TO
17        v.                            ENFORCE COURT ORDERS AND
                                        STRIKE CENTRIFY'S AMENDED
18   QUEST SOFTWARE, INC.,              INFRINGEMENT CONTENTIONS**

19                    Defendant.        Date: November 3, 2011
                                        Time: 2:00 PM
20                                      Location: Courtroom 2, 4th Floor
                                        Judge: Hon. Claudia Wilken
21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

PAGE

I.      INTRODUCTION ...................................................................................................... 1

II.     STATEMENT OF ISSUES TO BE DECIDED ...................................................... 2

III.    RELEVANT FACTS ................................................................................................ 2

    A.      The Parties Agreed That Centrify Would Supplement But Not Amend Its Infringement Contentions and the Court Ratified The Agreement ........................ 2

    B.      The Technology and Product at Issue ...................................................... 3

    C.      The '005 Patent Covers a Specific Type of Username Mapping ........................... 6

    D.      Centrify's Original Infringement Contentions Only Accused Remote Mapping Functionality of Infringement ...................................................... 7

    E.      Centrify's Amended Infringement Contentions Accuse Remote, Local, and Root Mapping Functionality of Infringement ...................................................... 9

    F.      Centrify's Amended Infringement Contentions Add New Allegations of Infringement Under the Doctrine of Equivalents .................................................. 10

    G.      Centrify's Amended Infringement Contentions Did Not Provide Any Detailed Allegations of Indirect Infringement .................................................... 10

    H.      Centrify Refused to Withdraw Its Amended Infringement Contentions ............. 11

IV.     LEGAL STANDARD ............................................................................................. 11

V.      ARGUMENT .......................................................................................................... 12

    A.      Centrify Amended Its Infringement Contentions In Violation of Its Agreement With Quest and the Court's Orders .................................................. 12

    B.      The Court Should Strike Centrify's New Infringement Theories ........................ 14

    C.      The Court Should Strike Centrify's Newly-Asserted Doctrine Of Equivalents Infringement Theory ...................................................................... 16

        1.      Adding a New Doctrine of Equivalents Theory Violates the Parties' Agreement and the Court's Orders ................................................. 16

        2.      Centrify's DOE Amendment Is Futile Because Its Equivalents Allegations Fail to Satisfy the Requirements of the Patent Local Rules................................................................................................ 16

    D.      The Court Should Strike Centrify's Indirect Infringement Contentions Because They Fail to Comply With Patent Local Rule Requirements ................. 17

VI.     CONCLUSION ....................................................................................................... 18

TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*Acer, Inc. v. Tech. Props. Ltd.*,
No. 5:08-CV-008877 JF/HRL, 5:08-CV-0882 JF/HRL, 5:08-CV-05398 JF/HRL, 2010
WL 3618687 (N.D. Cal. Sept. 10, 2010) ............................................................................... 15

*Bender v. Advanced Micro Devices, Inc.*,
No. C-09-1149-MMC (EMC), 2010 WL 363341 (N.D. Cal. Feb. 1, 2010) .......................... 14

*Bender v. Maxim Integrated Prods., Inc.*,
No. C 09-01152 SI, 2010 WL 2991257 (N.D. Cal. Jul. 29, 2010) ....................................... 17

*Brilliant Instruments, Inc. v. Guidetech, Inc.*,
No. C 09-5517 CW, 2011 WL 1628017 (N.D. Cal. Apr. 29, 2011) ................................. 15, 16

*California Inst. Of Computer Assisted Surgery, Inc. v. Med-Surgical Servs., Inc.*,
No. 4:10-CV-05067 CW (NC) at 4 (N.D. Cal. Sept. 1, 2011) .............................................. 18

*Google, Inc. v. Netlist, Inc.*,
No. C 08-4144 SBA 09-5718 SBA, 2010 WL 1838693, at *2-3 (N.D. Cal. May 5,
2010) ..................................................................................................................................... 11

*Johnson v. Mammoth Recreations*,
975 F.2d 604 (9th Cir. 1992)................................................................................................. 15

*O2 Micro Int'l Ltd. v. Monolithic Power Sys.*, Inc., 467 F.3d 1355 (Fed. Cir. 2006)) ................ 15

*Optimumpath, LLC v. Belkin Int'l, Inc.*,
No. C 09-01398 CW, 2011 WL 1399257 (N.D. Cal. Apr. 12, 2011) .................................... 16

*United States v. W.R. Grace*,
526 F.3d 499 (9th Cir. 2008) (en banc).................................................................................. 11

**OTHER AUTHORITIES**

Patent
L.R. 3-1 ................................................................................................................. passim
L.R. 3-1(c).................................................................................................................. 2, 12
L.R. 3-1(d).................................................................................................... 2, 11, 17, 18
L.R. 3-1(e)................................................................................................................... 2, 16
L.R. 3-2 ....................................................................................................................... 2, 12
L.R. 3-6 .............................................................................................................. 11, 15, 16

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. 10-cv-03873-CW                    ii.                    MOTION TO ENFORCE COURT ORDER

1

## NOTICE OF MOTION AND MOTION TO ENFORCE COURT ORDERS

2

## AND STRIKE CENTRIFY'S AMENDED INFRINGEMENT CONTENTIONS

3

### TO PLAINTIFF AND TO ITS ATTORNEYS OF RECORD:

4

PLEASE TAKE NOTICE that on November 3, 2011, at 2:00 p.m. or as soon thereafter as

5 the matter may be heard, in the courtroom of the Honorable Claudia Wilken, Quest Software, Inc.

6 will, and hereby does, move this Court to enforce its Orders (Dkt. Nos. 65, 78) and the Patent

7 Local Rules by (1) striking new infringement theories in Centrify's Amended Infringement

8 Contentions that were added in violation of the Orders and an agreement of the parties; (2)

9 striking new doctrine of equivalents infringement allegations in Centrify's Amended

10 Infringement Contentions that (i) were added in violation of the Orders and an agreement of the

11 parties, and (ii) that violate Patent L.R. 3-1(e); and (3) striking conclusory allegations of indirect

12 infringement that fail to comply with Patent L.R. 3-1(d).

13

14 Dated: September 29, 2011                    COOLEY LLP

15

16                                                          /s/ *Orion Armon*

17                                                          Orion Armon (pro hac vice)

18                                                          Attorneys for Defendant Quest Software, Inc.

19

20

21

22

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.   INTRODUCTION

3

After Centrify served deficient Patent L.R. 3-1 Infringement Contentions in January 2011,

4
Quest asked it to supplement its Contentions with citations to technical documents and source

5
code.  Centrify agreed to do so after obtaining discovery, and the parties filed a stipulated Order

6
memorializing their agreement on June 16, 2011.  (Dkt. No. 65.)  The stipulation expressly

7
prohibited Centrify from amending its contentions to add new infringement theories.  (*Id*.)  The

8
Court approved the agreement and entered it as an Order on June 20, 2011.  (*Id*.)  The parties later

9
filed a second stipulation to clarify Centrify's deadline for serving its supplemental infringement

10
contentions and the Court entered it as an Order on August 10, 2011.  (Dkt. No. 78.)  The second

11
Order also prohibited Centrify from amending its Infringement Contentions to add new theories.

12
Before Centrify served any supplemental infringement contentions, it learned that the

13
optional functionality accused in its Original Infringement Contentions is used by *only one* Quest

14
customer—Bank of America.  After learning this key fact, Centrify reneged on its agreement with

15
Quest and violated the Court's Orders (Dkt. Nos. 65 and 78) by serving purported Amended

16
Infringement Contentions that seek to add new infringement theories and new assertions of

17
infringement under the doctrine of equivalents.   In addition to its improper amendments,

18
Centrify's Amended Contentions remained deficient because they included the same incomplete

19
allegations of indirect infringement that were included in Centrify's Original Contentions.

20
Aside from violating the Court's Orders, Centrify's Amended Infringement Contentions

21
would severely prejudice Quest if allowed to stand.  The Contentions were served on August 15,

22
2011—just two weeks before the close of fact discovery—and Centrify neither showed good

23
cause nor obtained leave of Court before serving the amendments.[1]  At that point, the deadline for

24
serving additional written discovery was long past and as a practical matter, it was too late to

25
schedule additional depositions.  Consequently, Quest only gathered discovery to support non-

26
infringement and damages defenses tailored to Centrify's Original Infringement Contentions and

27

28

---

[1] Centrify has neither argued that it has good cause for its amendments nor sought leave to amend.  Quest reserves the right to separately oppose a motion to amend if one is filed.

had no opportunity to seek discovery to rebut Centrify's new infringement theories.

Quest respectfully requests that the Court enforce its Orders and the parties' agreement by striking Centrify's new infringement theories. Second, Quest requests that the Court strike Centrify's new doctrine of equivalents allegations for two independent reasons: (a) the equivalents allegations were added in violation of the Court's Orders and the agreement of the parties, and (b) the allegations lack the detail that is required to satisfy Patent L.R. 3-1(e). Third, Quest requests that the Court strike Centrify's allegations of inducing and contributory infringement for failing to comply with Patent L.R. 3-1(d), which requires explanation regarding which Quest customers directly infringe and how Quest has induced or contributed to customers' infringement.

## II.   STATEMENT OF ISSUES TO BE DECIDED

- Should the Court enforce the parties' agreement and its Orders by striking new infringement theories in Centrify's Amended Infringement Contentions?
- Should the Court enforce the parties' agreement and its Orders by striking doctrine of equivalents allegations in Centrify's Amended Infringement Contentions?
- Should the Court strike doctrine of equivalents allegations in Centrify's Amended Infringement Contentions because they fail to comply with Patent L.R. 3-1(e)?
- Should the Court strike the indirect infringement allegations in Centrify's Amended Infringement Contentions because they fail to satisfy Patent L.R. 3-1(d)?

## III.   RELEVANT FACTS

### A.   The Parties Agreed That Centrify Would Supplement But Not Amend Its Infringement Contentions and the Court Ratified The Agreement

Centrify's Original Infringement Contentions failed to include adequate evidentiary support, so the parties filed a stipulation on June 16, 2011 that required Centrify to supplement its infringement claim charts with citations to Quest source code and technical documents. (Dkt. No. 65 at 1-2.) The stipulation expressly limited Centrify to supplementation of its Patent L.R. 3-1(c) disclosures, stating: "Centrify will supplement its Patent L.R. 3-1(c) Disclosures to provide citations to Quest source code and technical documents," and further, "**this stipulation does not extend to amendments to other aspects of Centrify's infringement contentions or Centrify's Patent L.R. 3-1 and 3-2 Disclosure**." (*Id*. (emphasis added).)

After the first stipulation was filed and entered by the Court, a disagreement arose over Centrify's deadline for serving the supplements, so the parties filed a second stipulation on August 9, 2011 that included a clearer deadline.  (Decl. of Orion Armon Ex. 1.[2])  The new stipulation incorporated the terms of the original stipulation and again limited Centrify to supplementing without amendment.  (Dkt. No. 78.)  The court entered the new stipulation as an Order on August 10, 2011.  (*Id*.)

## B.      The Technology and Product at Issue

Centrify accuses Quest Authentication Services ("QAS") of infringement.  (Dkt. No. 22, First Amended Complaint, at 2.)  QAS simplifies the administration of computer networks by allowing users of non-Windows computers to be authenticated[3] at log-in using a popular Microsoft program called Active Directory.  (Ex. 2 at CEN00011798.)  By extending Active Directory authentication to non-Windows computers, QAS enhances security for companies that have computers running different types of operating systems, *i.e.*, Windows and non-Windows operating systems.  (*Id*.)  Authenticating non-Windows and Windows computer users through Active Directory enhances security because managing computer users' rights and access is simpler using a single, centralized tool.  (*Id*.)  For example, centralized management reduces the chances that an employee who quits or is fired will continue to have access to confidential information on the company's networks after leaving the company.  Many mid-to-large size companies have purchased tools like QAS to increase their compliance with Sarbanes-Oxley and other laws concerning computer security.

QAS provides four ways for users of non-Windows computers to log-in using Microsoft Active Directory.  (Ex. 3 at 13:20-14:16; Ex. 4 at 17:23-21:14.) The differences in the log-in options relate to the type of username that the user enters and whether the username needs to be converted—often referred to as "mapped"—to a Microsoft Active Directory username before authentication occurs.

---

[2] All exhibits are attached to the Declaration of Orion Armon.
[3] Authentication involves checking the computer user's username and password to determine if the user is authorized to access a computer or network.

Figure 1 illustrates these four log-in methods.  The first method is Single Username Log-In.  (*Id*.)  When this method is implemented, users have a single log-in name for all computers within the company, including non-Windows computers.  This method is the preferred and "standard" implementation for QAS, and it is not at issue in the present litigation.  (*Id*.)



The second, third and fourth methods in Figure 1 are grouped under the heading "Multiple Username Log-In."  Quest's marketing materials refer collectively to these log-in options as "Mapped User Mode."  (Ex. 2 at CEN00011825-26.)  Local Mapping, Remote Mapping, and Root Mapping are useful to some customers who are not ready to convert to Single Username Log-In because these methods allow computer users to log-in to each computer with a different username.  For example, a user might have a first log-in name for a Windows-based computer, a second log-in name for a Sun Microsystems computer, and a third log-in name for an Apple computer.  Using a mapping table,[4] QAS converts, or "maps," the Sun Microsystems or Apple username to the user's Microsoft Active Directory username before sending the username and password for authentication.  (*Id*.)

Although methods 2, 3, and 4 in Figure 1 are grouped together, they are implemented in radically different ways, and these implementation details lie at the heart of this case and the present dispute.

Figure 2 illustrates the implementation of two of the three methods (Local Mapping and

---

[4] The mapping table is a simple table or a database that relates a computer user's non-Windows username with the Microsoft Active Directory username that is used for authentication.

Root Mapping) of Multiple Username Log-In.  Figure 2 shows a computer user attempting to log into a local non-Windows computer.  The local computer contains a mapping table, and a network connection links the local computer to the Authenticator, which is a server running Microsoft Active Directory.  (Ex. 2 at CEN00011825-26; Ex. 3 at 13:20-14:16; Ex. 4 at 17:23-21:14.)



Figure 2: Mapped User / Local and Root Mapping Table Location

From a functional standpoint, Figure 2 shows that when a customer has implemented Local Mapping or Root Mapping, the user enters a non-Windows username and the local computer searches the local mapping table, finds the non-Windows username, and converts it to an Active Directory username.  The Local Computer then sends the Active Directory username along with the password to the Authenticator (i.e., Microsoft Active Directory) for authentication.  (*Id.*)  If the Active Directory username and password match the information stored at the Authenticator, the user is allowed to access the local computer.

Figure 3 illustrates how Remote Mapping—the third variety of Multiple Username Log-In—is implemented.  Figure 3 shows a computer user attempting to log into a local non-Windows computer.  In this implementation, a network connection links the local computer to two computers— (1) the Authenticator server running Microsoft Active Directory and (2) a remote Network Information Service ("NIS") server which contains a remote NIS mapping table.  (*Id.*) NIS is a Unix-based system that was developed by Sun Microsystems to provide centralized distribution of usernames and passwords to control user access.  (Ex. 5.)  A NIS server is a central

repository for usernames and passwords that is separate from the non-Windows computers that users access (i.e., the local computer).  As a result, a username mapping technique that employs a NIS server is necessarily Remote Mapping rather than Local or Root Mapping.  This NIS concept is key to this motion to strike and Centrify's original infringement contentions.



From a functional standpoint, Figure 3 shows that when a customer has implemented Remote Mapping, the end user enters a non-Windows username at the local computer, which sends a request to the Remote NIS Server to search the remote mapping table for the non-Windows username and convert it to an Active Directory username.  (Ex. 2 at CEN00011825-26; Ex. 3 at 13:20-14:16; Ex. 4 at 17:23-21:14.)  Once the NIS server locates the Active Directory username in its mapping table, the NIS server sends the Active Directory username back to the local computer.  The local computer completes the log-in process by sending the Active Directory username and password to the Authenticator (i.e., Microsoft Active Directory).  (*Id.*)

### C.    The '005 Patent Covers a Specific Type of Username Mapping

The patent-in-suit (U.S. Patent No. 7,591,005) teaches logging into a computer using two log-in names: a local log-in name and a network log-in name.  (Ex. 6.)  A user enters a local log-in name on a local computer that must be converted to a network log-in name by searching a mapping table on a second computer.  (*Id.* at Claims 1, 5.)  The network log-in name is used by an authenticator to determine whether the user should be allowed to log-into the local computer.

(*Id.* at Abstract.)  Stated simply, the '005 patent describes one form of username mapping.

When Centrify filed the patent application that issued as the '005 patent, it initially claimed a system in which the mapping table could be located and searched on either the local computer (the one that the user is logging into) *or* a remote computer such as a NIS server.  (Ex. 7, Original Application Claim 1.)  But after the Patent Office found prior art that disclosed username mapping using a local mapping table, Centrify narrowed its claimed invention to focus on searching a remote mapping table stored on a remote computer.

Centrify amended all of its claims to cover searching for a local log-in name in a mapping table that is stored on a second (i.e., remote) computer system.  Claim 1, which is exemplary, is shown below.  The underlined text was added by Centrify:

> 1. (Currently Amended) A computer-readable medium containing instructions that, when executed by a ~~UNIX~~ computing system, cause the system to perform operations comprising:
>
> detecting when a user attempts to log into the computing system;
>
> determining if a local log-in name supplied by the user should be replaced by a network log-in name used for network-wide authentication, **wherein the determination comprises searching for the local log-in name in a mapping table, the mapping table being stored in a database on a second computing system that is accessible via a network**;
>
> replacing the local log-in name with the network log-in name if so determined; and
>
> sending the log-in name to an authenticator to authenticate the user for logging into the computing system.

(Ex. 7, May 28, 2009 Amendment at 2 (emphasis added).)

### D.   Centrify's Original Infringement Contentions Only Accused Remote Mapping Functionality of Infringement

Centrify's First Amended Complaint focuses exclusively on Remote Mapping functionality in QAS.  (Ex. 8 at 2.)  The First Amended Complaint emphasizes that Remote

Mapping functionality infringes because QAS searches a remote NIS mapping table—allegedly satisfying the key "remote mapping table" limitation that Centrify added to obtain allowance of its patent.  (*Id.*)  Centrify's First Amended Complaint specifically alleges that QAS infringes when a mapping table on an NIS server—which is the remote computer—is searched for mapping information: "QAS uses a Network Information Service ("NIS") "passwd" file or map."[5]  (*Id.*)  The First Amended Complaint does not contain allegations of infringement by any functionality other than Remote Mapping.  In particular, it contains no allegations of infringement by the two username mapping features in QAS (Local Mapping and Remote Mapping) that search a local mapping table stored on the computer that the user logs into.

Like its Amended Complaint, Centrify's Original Infringement Contentions only accuse Remote Mapping of infringement.  (Ex. 9 at Ex. A pp. 3-6 and Ex. B pp. 3-6.)  The Original Contentions allege that the Remote Mapping feature infringes because the mapping table is a "NIS map" that is searched and stored remotely from the user's computer system on a NIS server.  (*Id.*)  Throughout its claim charts, Centrify reiterates that Remote Mapping functionality infringes because searching a mapping table on a remote NIS server satisfies the key "remote mapping table" limitation in each claim in the '005 patent.  The following statement is representative of Centrify's allegations:

> The file that contains *passwd* entries for local users, e.g., the *mapping table*, is a *passwd* NIS map, which is remote from the computing system, [so] QAS uses a *mapping table being stored in a database on a second computing system that is accessible via a network*.

(Ex. 9 at Ex. A pp. 3, 5 and Ex. B pp. 3, 5.)[6]  As discussed above, Figure 3 shows a NIS server and the remote username mapping table, which Centrify calls a "passwd NIS map."

Centrify's Original Infringement Contentions do not allege that QAS infringes when it performs username mapping by searching a local mapping table stored on the computer that the

---

[5] Remote Mapping using a NIS server is discussed above and shown in Figure 3.

[6] Centrify's Original Infringement Contentions quote portions of QAS user guides that broadly discuss all three types of Mapped User functionality.  But Centrify's Original Contentions never assert infringement by Local or Root Mapping or allege that a local mapping table could satisfy the key "remote mapping table" limitation in the '005 patent.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

user is attempting to log into.  In other words, the Original Contentions do not contend that Local

Mapping or Root Mapping functionality infringes Centrify's '005 patent.

### E.      Centrify's Amended Infringement Contentions Accuse Remote, Local, and Root Mapping Functionality of Infringement

Centrify served its Amended Infringement Contentions on August 15, 2011.  The

Amended Contentions are attached as Ex. 10.  The attached version contains a redline comparison

that shows how the Amended Contentions differ from Centrify's Original Infringement

Contentions.  (*Id.*)  Centrify's Amended Infringement Contentions did not only provide citations

to source code and technical documents—they also broaden its infringement theories by going

beyond Remote Mapping and for the first time accusing Local Mapping and Root Mapping of

infringement.  (*Id.*)

As detailed above, Centrify's Original Infringement Contentions specifically focus on the

"NIS map, which is remote from the computing system."  As previously described and shown in

Figure 3, the NIS map is located on a remote computer accessible through the network.  Centrify

originally stated:

> Since the file that contains passwd entries for local users, e.g., *the
> mapping table*, is a passwd NIS map, which is remote from the
> computing system, QAS *uses a mapping table being stored in a
> database on a second computing system that is accessible via a
> network.*

(Ex. 9 at Ex. A pp. 3, 5 and Ex. B pp. 3, 5.)

In contrast, Centrify's Amended Infringement Contentions add new allegations focused on

local mapping tables that are stored on the computer that the user is logging into.  The Amended

Infringement Contentions identify two local mapping table locations that allegedly satisfy the

"remote mapping table" limitation: (1) the "/etc/passwd file," and (2) locally-stored copies of

mapping information that are "cached" on the local user's computer.  (Ex. 10 at Ex. A pp. 3, 5, 9,

12, 17, 23-24.)

The double-underlined text in the excerpt below shows text added by Centrify when it

served its Amended Contentions.  The bold-face text shows new discussion of local username

mapping tables.  Prior to service of Centrify's Amended Infringement Contentions, Centrify had

never asserted that a local mapping table contained in the /etc/passwd file on the local Unix computer or a locally "cached" copy of username mapping information could satisfy the key "remote mapping table" limitation in its claims.

> For example, QAS can be implemented in a Unix computing system, and includes instructions that, when executed, interact with standard Unix login functions, such as the getpwnam_r() function that retrieves information associated with a particular user from one of several locations, based on settings in the operating system. **One such location is the /etc/passwd file on the [local] Unix computing system.** Other locations can be accessed, based on settings in the /etc/nsswitch.conf file, such locations including information stored on remote computers (such as NIS, LDAP or other servers). **QAS also includes instructions that allow "caching" locally the mapping information from the remote computers.**

> See, for example, QAS/Client/src/libs/cache/users.c. ("Need to see if the user is a mapped user … but only if the caller is *really* interested in mapped users. We need to check this whether or not they are in the /etc/passwd file, because the mapping could be occurring in LDAP, NIS, or some other external repository.")

(Ex. 10 at Ex. A p. 9.)

## F. Centrify's Amended Infringement Contentions Add New Allegations of Infringement Under the Doctrine of Equivalents

Centrify's Amended Infringement Contentions also contain new assertions of infringement under the doctrine of equivalents. The double-underlined text highlights the change:

> All of the Asserted Claims are directly and indirectly infringed by Quest. Quest directly infringes these claims both literally and under the doctrine of equivalents by making, using, offering for sale, or selling QAS/VAS products within the United States, or by importing this product into the United States.

(Ex. 10 at 2, 3.) These allegations comprise the entire discussion of the doctrine of equivalents in Centrify's Amended Contentions. There is no claim-by-claim or limitation-by-limitation discussion showing how the structures in QAS are equivalent to the limitations in Centrify's asserted patent claims, and nothing in the Original Contentions.

## G. Centrify's Amended Infringement Contentions Did Not Provide Any Detailed Allegations of Indirect Infringement

Centrify's Original Infringement Contentions and its Amended Infringement Contentions

1  contain the same disclosure concerning alleged indirect infringement. Centrify generally alleges

2  that Quest's customers directly infringe and that Quest induces and contributes to its customers'

3  infringement via unspecified acts and communications:

> In addition, Quest's customers directly infringe the Asserted Claims
> by using the QAS/VAS products, e.g., by executing Quest software
> on one or more computer systems, in the manner set forth in
> Exhibits A-B.
>
> Quest induces this direct infringement of the Asserted Claims by
> selling the QAS/VAS products, and by providing customers with
> instructions, documentation, and support for QAS/VAS products.
>
> Quest contributes to this direct to infringement of the Asserted
> Claims by making and selling the QAS/VAS products, their
> mapped user or mapped user mode feature, and reasonably similar
> products or services, which have no substantial non-infringing uses,
> and which Quest sells to its customers with knowledge of the '005
> patent.

12  (Ex. 10 at 3-4.) Neither the Original nor the Amended Contentions include any detailed

13  allegations of indirect infringement. And the claim charts supporting the Original and Amended

14  Contentions do not include any discussion of direct or indirect infringement.

15  **H.    Centrify Refused to Withdraw Its Amended Infringement Contentions**

16  Beginning on August 19, 2011, counsel for Quest sent multiple letters and emails to

17  Centrify asking it to clarify the intent behind its Amended Infringement Contentions, withdraw

18  improper amendments, and drop or narrow unsupported indirect infringement allegations. (Ex.

19  11, Aug. 19 letter; Ex. 12, Aug. 29 email; Ex. 13, Sept. 1 letter; Ex. 14, Sept. 3 email.) Centrify

20  repeatedly delayed a meet-and-confer on the issue but eventually confirmed on September 6,

21  2011 that its Amended Infringement Contentions allege infringement against all forms of Mapped

22  User functionality (Remote, Local, and Root) as well as allegations of infringement under the

23  doctrine of equivalents. (Armon Decl. ¶ 16.) Centrify refuses to withdraw its new infringement

24  theories or drop its allegations of indirect infringement that fail to satisfy Patent L.R. 3-1(d). (*Id.*)

25  **IV.    LEGAL STANDARD**

26  "All federal courts are vested with inherent powers enabling them to manage their cases

27  and courtrooms effectively and to ensure obedience to their orders." *United States v. W.R. Grace*,

28  526 F.3d 499, 509 (9th Cir. 2008) (en banc) (internal quotes and citations omitted).

1    Amendments to Infringement Contentions "may be made only by order of the Court upon

2    a timely showing of good cause."  PATENT L.R. 3-6; *Google, Inc. v. Netlist, Inc.*, No. C 08-4144

3    SBA, C 09-5718 SBA, 2010 WL 1838693, at *2-3 (N.D. Cal. May 5, 2010) (reciting standard

4    and denying motion to amend infringement contentions that was filed on the day before the close

5    of fact discovery).

6    **V.     ARGUMENT**

7        **A.     Centrify Amended Its Infringement Contentions In Violation of Its
            Agreement With Quest and the Court's Orders**
8

9        Centrify entered into an agreement with Quest regarding the scope of the supplements it

10   would make to its Original Infringement Contentions and the Court issued two Orders reflecting

11   the terms of that agreement.  (Dkt. Nos. 65, 78.)  Centrify reneged on the parties' agreement and

12   ignored the Court's Orders when it served its Amended Infringement Contentions containing new

13   infringement theories.

14       The parties' agreement and Court Orders expressly permitted Centrify only to

15   "supplement its Patent L.R. 3-1(c) Disclosures to provide citations to Quest source code and

16   technical documents," and expressly noted that "**this stipulation does not extend to**

17   **amendments to other aspects of Centrify's infringement contentions or Centrify's Patent**

18   **L.R. 3-1 and 3-2 Disclosure**."  (Dkt. No. 65 at 1-2.)  Disregarding these limitations, Centrify

19   dramatically expanded its infringement theories by extending its allegations beyond Remote

20   Mapping to include Local and Root Mapping functionality and by adding new assertions of

21   infringement under the doctrine of equivalents.

22       Centrify attempted to forestall this motion by arguing during the parties' meet and confer

23   that its Amended Contentions do not amend its infringement theories.  But its argument is belied

24   by the title of the Contentions themselves, which are labeled "Supplemental and Amended"

25   disclosures.  (Ex. 10.)  And its position is disproved by Centrify's new allegations focused on

26   Local Mapping and Root Mapping, which involve searching a local mapping table for a Microsoft

27   Active Directory username.  (Ex. 10 at Ex. A pp. 3, 5, 9, 12, 17, 23, 24.)  Centrify's Original

28   Contentions never alleged that a local mapping table could satisfy the "remote mapping table"

1   limitation in the '005 patent.  (Ex. 9.)

2          Centrify's behavior since serving its Amended Infringement Contentions also confirms

3   that it is improperly attempting to broaden its infringement theories.  Prior to learning that Bank

4   of America is the only Quest customer that uses Remote Mapping functionality, Centrify

5   interpreted its Interrogatory Nos. 2, 9, and 10 to only require identification of Quest customers

6   who use Remote Mapping functionality.  Indeed, Centrify expressly demanded that Quest

7   supplement its interrogatory responses to identify each user of Remote Mapping functionality.[7]

8   (Ex. 15.)  Quest disagreed that Centrify's Interrogatory Nos. 2, 9, and 10 request the identities of

9   customers, but accommodated Centrify anyway because it had already produced documents about

10  usage of Remote Mapping.  On August 12, 2011, Quest identified Bank of America as the only

11  domestic customer it is aware of that uses Remote Mapping.  (Armon Decl. ¶18; Ex. 16.)  Newly

12  aware of how little the functionality it had accused appeared to be used in practice,  Centrify

13  responded a few days later by dramatically broadening the infringement theories in its Amended

14  Infringement Contentions to accuse *all* forms of Mapped User functionality of infringement,

15  including the forms (Local and Root Mapping) that utilize local username mapping tables.  (Ex.

16  10.)

17         Further, after improperly amending its Infringement Contentions, Centrify suddenly

18  demanded new discovery to obtain information that would support its new infringement theories.

19  With no prior warning, Centrify demanded on September 8—seven days after the close of fact

20  discovery—that Quest update its responses to Interrogatory Nos. 2, 9, and 10 to identify every

21  Quest customer that uses *any* form of Mapped User functionality.  The demand was surprising not

22  only because it came so late (a week after the close of fact discovery), but also because Centrify's

23  new interpretation of Interrogatory Nos. 2, 9, and 10 contradicted its earlier position when it

24  argued that the interrogatories only required disclosure of the identities of customers who use

25  *Remote* Mapping functionality.  (Ex. 15.)

---

[7] On June 3, 2011, Quest served Supplemental Initial Disclosures that identified every Quest customer that has licensed QAS.  Centrify has only served a deposition subpoena on one of those customers—Bank of America.  (Ex. 17.)

A few hours after the September 8 meet and confer, Centrify filed a motion to compel Quest to identify all customers who use any form of Mapped User functionality. (Dkt. No. 85.) Like its demands during the meet-and-confer, Centrify's motion contradicted its earlier interpretation of Interrogatory Nos. 2, 9, and 10 by asserting that Quest must identify *all* customers who use Mapped User functionality and not just customers who use Remote Mapping:

> In addition, Quest's supplemental responses suggest that it is parsing Centrify's interrogatories to call for the identification by name of only the customers whom Quest believes might be infringing Centrify's patent. This is improper. Quest should be required to identify all customers who use the Mapped User function **and each party can then make its contentions as to which customers infringe**.[8]

(Dkt. No. 85 at 6 (emphasis added).)   Centrify's inconsistent interpretation of its own interrogatories and its hasty decision to file a late motion to compel demonstrates that it developed new infringement theories to resuscitate its damages case after learning that Bank of America is the only Quest customer that uses Remote Mapping.

Prior to the hasty meet-and-confer that Centrify requested on September 8, 2011, Centrify had never alleged that Quest's document production or interrogatory responses were deficient because they lacked information about customers' use of Local Mapping and Root Mapping. If, as Centrify asserts, it has alleged infringement by Local Mapping and Root Mapping all along, Centrify would not have waited until seven days after the close of fact discovery before objecting for the first time that Quest had not provided information regarding customers' use of these features.

**B.    The Court Should Strike Centrify's New Infringement Theories**

The Court should strike Centrify's new infringement contentions covering Local and Root

---

[8]   Centrify's suggestion that it should be provided additional discovery and then be allowed to "make its contentions as to which customers infringe" contradicts the parties' agreement, two Court Orders, and the Patent Local Rules, all of which are focused on maintaining the infringement theories that Centrify crystallized in its Original Infringement Contentions. *Bender v. Advanced Micro Devices, Inc.*, No. C-09-1149-MMC (EMC), 2010 WL 363341, at *1 (N.D. Cal. Feb. 1, 2010) ("The purpose underlying Rule 3-1 is to require the party claiming infringement to crystallize its theories of the case early in the litigation and to adhere to those theories once disclosed.")

Mapping functionality in QAS. Centrify violated its agreement with Quest and two Court Orders when it served its Amended Infringement Contentions. The Court should not tolerate Centrify's violations. (*See* Dkt. Nos. 65, 78.)

Striking Centrify's new infringement theories is further justified because Centrify never demonstrated good cause for its amendment. *See* Patent L.R. 3-6; *Brilliant Instruments, Inc. v. Guidetech, Inc.*, No. C 09-5517 CW, 2011 WL 1628017, at *1-2 (N.D. Cal. Apr. 29, 2011) (denying motion for leave to amend contentions because movant failed to show good cause).

Even if Centrify attempted to show good cause for its amendment, it would fail for lack of diligence. The publicly-available materials cited in its Original Infringement Contentions describe Remote, Local, and Root Mapping functionality. (Ex. 2 at CEN00011824-25, 11935.) In other words, Centrify was aware of Local and Root Mapping functionality at the outset of the litigation but neither accused that functionality of infringement nor sought discovery about it until after Centrify learned that Bank of America is the only customer known to Quest that uses Remote Mapping. Centrify's knowledge and the public availability of information concerning Local and Root Mapping vitiates any argument it might offer to show that it was diligent in making the amendments. *Brilliant Instruments, Inc.*, 2011 WL 1628017, at *1-2 ("Brilliant's argument, however, is vitiated by the publicly available '484 patent, which Brilliant knew of and believed to be 'relevant prior art' in June 2010.").

If a litigant fails to show diligence, courts in this district do not even reach the issue of prejudice, so it is unnecessary for the Court to even consider the issue of prejudice. *Acer, Inc. v. Tech. Props. Ltd.*, No. 5:08-CV-008877 JF/HRL, 5:08-CV-0882 JF/HRL, 5:08-CV-05398 JF/HRL, 2010 WL 3618687 (N.D. Cal. Sept. 10, 2010) ("Because TPL has not demonstrated diligence, 'the inquiry should end.'")(quoting *Johnson v. Mammoth Recreations*, 975 F.2d 604, 609 (9th Cir. 1992); *O2 Micro Int'l Ltd. v. Monolithic Power Sys.*, Inc., 467 F.3d 1355, 1366-68 (Fed. Cir. 2006)). Nevertheless, as discussed in the introduction, ample evidence of prejudice exists. Centrify's addition of new infringement theories at the close of fact discovery severely prejudices Quest's ability to defend itself in this litigation, and there is no way to remedy that prejudice without derailing the litigation schedule and forcing Quest to take additional costly

discovery.

**C.   The Court Should Strike Centrify's Newly-Asserted Doctrine Of Equivalents Infringement Theory**

**1.   Adding a New Doctrine of Equivalents Theory Violates the Parties' Agreement and the Court's Orders**

The Court should also strike Centrify's newly-asserted doctrine of equivalents theory. (Ex. 10 at 2-3.)  Like Centrify's other amendments, the addition of the doctrine of equivalents theory violated the parties' agreement and the Court's Orders.  (Dkt. Nos. 65, 78.)  The Court should not tolerate Centrify's violation of its Order—especially since Centrify neither sought leave for the amendment nor demonstrated good cause pursuant to Patent L.R. 3-6.  *Brilliant Instruments, Inc.*, 2011 WL 1628017, at *1-2 (denying motion for leave to amend contentions because movant failed to show good cause).

Centrify may argue that its violation is a technicality because its Original Infringement Contentions purport to reserve the right to later assert an equivalents theory.  (Ex. 9 at 2-3.)  Such reservations of rights are ineffectual.  If they were effective, the Patent Local Rules would be toothless and litigants would be free to make an end-run around the Rules simply by reserving the right to amend.

**2.   Centrify's DOE Amendment Is Futile Because Its Equivalents Allegations Fail to Satisfy the Requirements of the Patent Local Rules**

Striking Centrify's doctrine of equivalents contentions is further justified because its equivalents contentions fail to satisfy Patent Local Rule 3-1(e).  Centrify's equivalents disclosures are deficient because they do not explain how each limitation of each asserted claim is alleged to be present under the doctrine of equivalents.  (Ex. 10 at 2-3.)  This Court recently held that catch-all, blanket statements (like the ones in Centrify's Supplemental and Amended Infringement Contentions) are inadequate to satisfy Patent L.R. 3-1(e).  *Optimumpath, LLC v. Belkin Int'l, Inc.*, No. C 09-01398 CW, 2011 WL 1399257, at *7-8 (N.D. Cal. Apr. 12, 2011) (holding that plaintiff's catch-all statements regarding the doctrine of equivalents failed to satisfy Patent L.R. 3-1).  Centrify's Amended Infringement Contentions would fail to properly allege infringement by equivalents even if Centrify's amendments were allowed.

### D. The Court Should Strike Centrify's Indirect Infringement Contentions Because They Fail to Comply With Patent Local Rule Requirements

Centrify's inducing and contributory infringement allegations should be struck too because they fail to satisfy the requirements of Patent Local Rule 3-1(d). The only allegations concerning indirect infringement in Centrify's Supplemental and Amended Infringement Contentions are the boilerplate assertions in its cover pleading:

> In addition, Quest's customers directly infringe the Asserted Claims by using the QAS/VAS products, e.g., by executing Quest software on one or more computer systems, in the manner set forth in Exhibits A-B.
>
> Quest induces this direct infringement of the Asserted Claims by selling the QAS/VAS products, and by providing customers with instructions, documentation, and support for QAS/VAS products.
>
> Quest contributes to this direct to infringement of the Asserted Claims by making and selling the QAS/VAS products, their mapped user or mapped user mode feature, and reasonably similar products or services, which have no substantial non-infringing uses, and which Quest sells to its customers with knowledge of the '005 patent.

(Ex. 10 at 3-4.)

These allegations fail to satisfy Patent L.R. 3-1(d), which requires "[f]or each claim which is alleged to have been indirectly infringed, an identification of any direct infringement and a description of the acts of the alleged indirect infringer that contribute to or are inducing that direct infringement." Centrify's contentions are deficient because they improperly accuse every Quest customer of indirect infringement—even though there are four different ways to log into a computer using QAS—and Centrify does not even purport to accuse one of those methods, Single Username Log-In, of infringing. *Bender v. Maxim Integrated Prods., Inc.*, No. C 09-01152 SI, 2010 WL 2991257, at *4 (N.D. Cal. Jul. 29, 2010) (finding that plaintiff's general allegations of indirect infringement failed to satisfy Patent L.R. 3-1(d)). (See Figure 1 for an overview of the log-in methods supported by QAS.) Single Username Log-in is Quest's preferred and recommended implementation. And when a customer implements Single Username Log-in, username mapping is unnecessary and unused. In other words, Quest customers who use the non-accused Single Username Log-in method cannot be direct infringers because they do not use QAS

Mapped User functionality.[9]

As another court in this district recently explained, Patent L.R. 3-1(d) requires a description of how a defendant's customers infringe, which claims they infringe, and how the defendant induced or contributed to its customers' infringement.  (Ex. 18, *California Inst. Of Computer Assisted Surgery, Inc. v. Med-Surgical Servs., Inc.*, No. 4:10-CV-05067 CW (NC) at 4 (N.D. Cal. Sept. 1, 2011).)  Centrify's allegations fail to satisfy this standard, despite having full access to information concerning the QAS product and a full customer list well before its Supplemental and Amended Infringement Contentions were served.  (Ex. 17.)  Centrify's failure to satisfy Patent L.R. 3-1(d) justifies striking its indirect infringement allegations; even if the amendments were allowed, they would be futile.

## VI.   CONCLUSION

Centrify violated its agreement with Quest and disregarded the Court's Orders by serving Amended Infringement Contentions that included new theories of infringement.  Centrify refuses to withdraw the improper amendments even though it lacks good cause and made no attempt to obtain leave of court.   The Court should therefore (1) strike Centrify's new infringement contentions directed to Local and Root Mapping and limit Centrify to its original allegations focused on Remote Mapping, and (2) strike Centrify's new doctrine of equivalents contentions. The Court should also strike Centrify's allegations of inducing and contributory infringement because they fail to satisfy the requirements of Patent L.R. 3-1(d).

---

[9] Identification of direct infringement by customers is a critical issue in this litigation because two of the four asserted claims (Claims 5 and 6) are method claims that can only be infringed if the QAS software is used in a certain manner.  (*See* Ex. 6.)  And *even under Centrify's infringement theory*, the structures recited in Centrify's other asserted claims (Claims 1 and 2) cannot be infringed unless customers install QAS in a certain manner because QAS does not include computer-readable instructions to perform all of the operations recited by Centrify's claims.  (*See* Ex. 10 at Ex. A pp. 8-9 (accusing QAS in conjunction with code included in the Unix operating system.)

1   Dated: September 29, 2011                COOLEY LLP

2

3                                           /s/ *Orion Armon*
                                            Orion Armon (pro hac vice)
4
                                            Attorneys for Defendant Quest Software, Inc.
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **CERTIFICATE OF CONFERENCE**

2

3

     The undersigned counsel conferred with opposing counsel in a good faith attempt to

4

resolve the issues raised in the present motion without court intervention.  The parties were

5

unable to reach an agreement that would render the present motion unnecessary.

6

7

Dated: September 29, 2011                                    By: /s/ *Orion Armon*_____

                                                        Orion Armon

8

9

10   363457 v1/CO

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28